IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REIS JARED TAYLOR,                                    Case No. 2:15-cv-01608-MA

          Petitioner,                          **OPINION AND ORDER**

    v.

STEVE FRANKE,

          Respondent.

MARSH, Judge.

Petitioner is currently in the custody of the Oregon Department of Corrections. He brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Petitioner's Habeas Corpus Petition (ECF No. 2) is DENIED, and this case is DISMISSED.

## **PROCEDURAL BACKGROUND**

On April 27, 2006, a Multnomah County jury convicted Petitioner of one count of Sodomy in the First Degree and two counts of Sexual Abuse in the First Degree, involving his girlfriend's four-year-old daughter ("S.R."). Resp't Exs. (ECF No. 18) 101, 104. The court sentenced Petitioner to a total of 140-months imprisonment, pursuant to an amended judgment dated November 30, 2006. Resp't Ex. 101. He directly appealed his convictions, but the Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Taylor*, 230 Or. App. 579, *rev. denied*, 347 Or. 447 (2009). Petitioner then sought post-

conviction relief ("PCR"), which the court denied. Umatilla County Circuit Court Case No. CV101718. On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Taylor v. Franke*, 270 Or. App. 600, *rev. denied*, 357 Or. 596 (2015).

In his Petition for Writ of Habeas Corpus, Petitioner alleges twelve instances of ineffective assistance of trial counsel, and two instances of ineffective assistance of appellate counsel. Pet. (ECF No. 2) at 6-7. Respondent argues all grounds, save two, are procedurally defaulted because Petitioner failed to present them to the Oregon Supreme Court on appeal from denial of PCR relief. Resp't Resp. (ECF No.18) at 8. With respect to the properly presented grounds alleging ineffective assistance of trial counsel, Respondent urges this Court to defer to the PCR court's decision, and deny relief. *Id.* at 9.

## FACTUAL BACKGROUND

In November 2004, S.R. first revealed to her grandmother that Petitioner sexually abused her. When S.R.'s grandmother told her not to put things other than food in her mouth, S.R. responded, "Reis put his—he put his pee-pee in my mouth…[h]e put his potty—his pee-pee in my potty." Resp't Ex. 103 at 104-106. S.R.'s grandmother told S.R.'s father of the abuse, who in turn notified S.R.'s mother. However, none of these adults reported S.R.'s statements to the authorities. *Id.* at 113-14, 217, 285.

A few months later, in February 2005, S.R. told a Head Start teacher about the abuse, and the Head Start teacher called Oregon Department of Human Services ("DHS"). Resp't Ex. 103 at 88, 90-91. Nobody answered the door when the DHS caseworker first visited the mother's residence. *Id.* at 118-120. When the DHS caseworker finally interviewed the child a few days later, the child said she had seen the caseworker on TV (via a security camera at her mother's

residence) while Petitioner "was hiding in the attic and her mom and her were in a back bedroom." *Id*. at 122-24. S.R. told the DHS caseworker that her mother told her not to disclose the abuse to the DHS caseworker or DHS would "take her away." *Id*. at 125. Nevertheless, S.R. described what Petitioner had done to her. *Id*. at 125-128. The DHS caseworker then called the police, who took S.R. into protective custody. *Id*. at 129. While they waited to be seen in the emergency room, S.R. continued to volunteer information to the DHS caseworker about how Petitioner had abused her, including that "her favorite thing to watch is naked movies that she and Reis watch together…and that during that time her and Reis touch each other's potties." *Id*. at 129, 131-32. She also volunteered that Petitioner told her not to tell her mom or she would be mad. *Id*. No physical abnormalities were detected during S.R.'s physical exam. *Id*. at 161.

On March 1, 2005, S.R. was interviewed at CARES Northwest ("CARES") – a child abuse evaluation clinic. The interview was videotaped. *Id*. at 164. The video was played to the jury during Petitioner's trial, which took place more than a year later. *Id*. at 147. S.R. also testified at the trial. Her testimony was consistent with her prior reports, except that she denied Petitioner had put anything in her mouth or made her watch pornography. *Id*. at 62-87. The CARES interviewer, nurse practitioner Kathryn McCready ("McCready"), also testified at the trial. McCready testified that she was unable to say with medical certainty that the child had been sexually abused, so her diagnosis was "highly concerning for sexual abuse." *Id*. at 171. She explained:

> [S.R.] was able to provide some history, but she's four and a half. And we try to be very cautious about drawing conclusions. The history she did provide was consistent over time, and the history she provided was – she used age-appropriate language and, you know, could provide some detail. It just wasn't as detailed as we often like to see.

*Id.* McCready explained that inconsistencies between S.R.'s trial testimony and CARES interview could be reasonably attributed to a combination of her young age, the lapse in time between the interview and the trial, the courtroom setting, and other potentially intimidating factors such as the presence in the courtroom of people who had threatened her. *Id.* at 172.

## DISCUSSION

### I.  Procedural Default and Un-Argued Claims

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appropriate stages afforded under state law. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Carrillo-Carrillo v. Coursey*, 823 F. 3d 1217, 1220 (9th Cir. 2016); *Casey v. Moore*, 386 F. 3d 896, 915-16 (9th Cir. 2004). If the petitioner procedurally defaults his available state remedies, habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider the defaulted claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner does not address procedural default, but "asks this Court to review all of the claims set out in his *pro se* petition." Pet'r's Br. in Supp. (ECF No. 28) at 14. However, this Court finds the only grounds in his Petition for Habeas Corpus Relief that Petitioner fairly presented for review to the Oregon Supreme Court are two grounds of ineffective assistance of trial counsel alleged in grounds (1)(h) and (1)(i), leaving the others unexhausted and therefore procedurally defaulted. Pet. at 6-7; Resp't Ex. 135. Petitioner has made no showing of cause

and prejudice to excuse his procedural default, or that a fundamental miscarriage of justice will occur if this Court declines to consider his claims.

Petitioner's supporting brief also fails to address any grounds for relief other than (1)(h) and (1)(i). Accordingly, this Court finds Petitioner has also failed to sustain his burden of demonstrating entitlement to relief on his un-argued claims. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (finding habeas petitioner bears the burden of proving his case).

## II. Ineffective Assistance of Counsel

A. <u>Standards</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas corpus relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

It is clearly established federal law that a claim of ineffective assistance of counsel requires a habeas Petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987). Failure to satisfy either prong of this test obviates the need to consider the other. *Id*. at 687.

This Court's inquiry under *Strickland* is highly deferential. The Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012). The issue is not whether this Court believes the state court's determination under *Strickland* is incorrect, but whether that determination was unreasonable – a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123-24 (2009); *Hibbler*, 693 F.3d at 1146, 1150. Reasonableness is determined as of the time of counsel's conduct, not in hindsight. *Strickland*, 466 U.S. at 689–90.

B. Failure to Offer Expert Testimony (Ground (1)(h))

In Ground (1)(h), Petitioner alleges trial counsel "was ineffective in not offering expert testimony regarding the possibility that [S.R.'s] testimony was tainted by repeated interviews." Pet. at 7. Petitioner argues that trial counsel should have called an expert such as Dr. Robert G. Stanulis ("Dr. Stanulis") who "could have testified that there is no scientifically valid way to determine whether a child's report of sexual abuse is credible; that Nurse McCready was using her professional credentials to vouch for [S.R.'s] report of abuse; and that some of the nurse's testimony about why she believed [S.R.'s] disclosure was based on misconceptions that were refuted by science." Pet'r's Br. in Supp. at 15-16.

The PCR court agreed that "it was error not to call an expert with a background similar to Dr. Stanulis's to offer some rebuttal of the child and other witnesses." Resp't Ex. 130 at 85. However, the PCR court found Petitioner had failed to show "a probability that such testimony would have resulted in an acquittal." *Id.*; Resp't Ex. 131 at 1-2. The PCR court explained, "There is no showing that the victim had reason to make up her testimony and it is at least as likely or even moreso [*sic*] that the jury would have returned the same verdict." Resp't Ex. 130 at 85.

Petitioner argues the PCR court unreasonably determined that he was not prejudiced by trial counsel's failure to call an expert. According to Petitioner, if an expert like Dr. Stanulis had testified at trial, there is a reasonable probability the jury would have acquitted Petitioner because it would have had reasons to doubt S.R.'s statements and McCready's diagnosis. Pet'r's Br. in Supp. at 29-30. In Petitioner's words:

> Expert testimony would have supplied reasons not to credit [S.R.'s] testimony, including the possibility that adults misunderstood what [S.R.] was telling them, that questions [S.R.'s] family asked had suggested answers that she adopted, and that her responses were contaminated. Likewise, expert testimony would have undermined McCready's purported expert diagnosis of "highly concerning for sexual abuse" and her testimony about child memory, which could have been countered with science about how memories are malleable and can be influenced and changed each time they are recalled.

Pet'r's Sur-Reply (ECF No. 41) at 13-14.

However, at the PCR hearing Dr. Stanulis admitted there was no evidence S.R. confabulated anything, or that her statements were contaminated by suggestive questioning. Resp't Ex. 130 at 52-54. Instead, S.R.'s multiple, spontaneous, disclosures to family members and child-care professionals that Petitioner had put his "pee-pee" in her mouth and in her "potty," were consistent over time. Resp't Ex. 103 at 88-91, 106-07, 124-26, 276-78; Resp't Ex. 121 (ECF No. 21) at 10. While it is true that at trial S.R. denied that Petitioner showed her pornography or put anything in her mouth, this downplaying or concealing of abuse supports the PCR court's finding, not Petitioner's argument. *See e.g.*, Resp't Ex. 103 at 125, 219. Petitioner fails to show that Dr. Stanulis's opinions about the effect of age and memory on the things children say would have impacted the jury's interpretation of McCready's testimony about her encounter with S.R. just days after DHS removed her from her mother's custody, or the diagnosis she formulated as a result of that encounter. Consequently, this Court finds Petitioner has failed

to prove the PCR court's determination (that Petitioner was not prejudiced by trial counsel's failure to call an expert) was based upon an unreasonable determination of the facts, or that it was contrary to, or an unreasonable application of *Strickland*.

C. <u>Failure to Object to CARES Nurse Testimony (Ground (1)(i))</u>

In Ground (1)(i), Petitioner alleges trial counsel was ineffective for failing to object to McCready's diagnosis testimony (that S.R. was "highly concerning for sexual abuse"). Pet. at 7; Resp't Ex. 103 at 171. The PCR court rejected this claim. Resp't Ex. 130 at 85-86.

At the time of Petitioner's trial in 2006, Oregon law permitted a medical expert to testify that a child had been sexually abused, even in the absence of physical evidence. *See Gresser v. Franke*, 2014 WL 1155229, *7 (D. Or. Mar. 20, 2014) (citing *State v. Wilson*, 121 Or. App. 460, 462–67 (1993)), *aff'd*, 628 Fed. Appx. 960 (9th Cir. 2015). Three years later, however, the Oregon Supreme Court held that a medical diagnosis of child sexual abuse was inadmissible absent corroborating physical findings. *State v. Southard*, 347 Or. 127 (2009).

According to Petitioner, *Southard* came as no surprise to the criminal defense bar because the Oregon Court of Appeals had been ignoring the Oregon Supreme Court for decades by allowing witnesses to comment on the credibility of other witnesses. *See* Pet'r's Sur-Reply at 4. Thus, Petitioner argues, "any reasonable criminal defense attorney handling sex abuse cases [at the time of Petitioner's trial] would have been encouraged…to raise challenges to the admission of sexual abuse diagnosis [*sic*], particularly where (like here) there was no corroborating physical evidence." Pet'r's Resp. (ECF No. 48) at 2. Yet, Petitioner does not argue, much less show, a reasonable probability that the result of the proceeding would have been different if counsel had objected to McCready's testimony. *Strickland*, 466 U.S. at 694. Instead, he conjectures that had

counsel preserved the objection for appeal, perhaps he would have been the one granted relief by the Oregon Supreme Court, rather than the prisoner in *Southard*. *See* Pet'r's Br. in Supp. at 31.

Petitioner further urges this Court to reject the finding in *Umberger v. Czerniak* that *Southard* represented a substantial shift in Oregon law, along with its holding that counsel was not ineffective for failing to anticipate it. *See Umberger v. Czerniak*, 232 Or. App. 563, 565–566, (2009) (finding petitioner's attorney was not ineffective for lacking the clairvoyance to anticipate the Oregon Supreme Court's opinion in *Southard*), *rev. den*, 348 Or. 13 (2010). This Court has squarely rejected this argument in the past, and does so again today, because the United States Supreme Court has clearly stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also*, *Balogh v. Kilmer*, No. 3:10–cv–1283–AC, 2012 WL 7830039, at *5 (D. Or. Nov. 29, 2012) ("Petitioner's argument that *Umberger* incorrectly determined that *Southard* was a new interpretation of state law is without merit. It is not for a federal court to disagree with a state court's interpretation of state law."); *see also McLain v. Blackletter*, No. 3:08–cv–01440–KI, 2012 WL 3116186, at *6 (D. Or. July 27, 2012) (finding the objectionable testimony "was clearly admissible under Oregon law, and petitioner's counsel was not ineffective for failing to anticipate future developments in the law and specifically the *Southard* decision").

Finally, this Court once again declines the invitation to follow *Wells v. Howton*, rather than the numerous cases since *Wells* addressing the *Southard* issue and holding that counsel's failure to anticipate *Southard* did not constitute ineffectiveness. Compare *Wells v. Howton*, No. 07–1117–TC, 2011 WL 5999356 (D. Or. Aug. 22, 2011), *adopted*, 2011 WL 5999359 (D. Or. Nov. 29, 2011), with *Hatchett v. Hill*, No. 06–1023–TC, 2011 WL 7443755 (D. Or. Dec. 21,

2011), *adopted*, 2012 WL 673767 (D. Or. Feb. 29, 2012) and *Balogh v. Kilmer*, No. 3:10–cv–1283–AC, 2012 WL 7830039 (D. Or. Nov. 29, 2012), *adopted*, 2013 WL 1352400 (D. Or. Apr. 3, 2013) and *Gresser v. Franke*, No. 2:12–cv–02073–HZ, 2014 WL 1155229 (D. Or. Mar. 20, 2014) and *Bowen v. Nooth*, No. 2:13–CV–00748–KI, 2015 WL 1492728, *6 (D. Or. April 1, 2015).

In sum, Petitioner has failed to prove the PCR court's decision (that trial counsel was not ineffective for failing to object to McCready's diagnosis testimony) was based upon an unreasonable determination of the facts, or that it was contrary to, or an unreasonable application of *Strickland*.

## CONCLUSION

Based on the foregoing, Petitioner's Habeas Corpus Petition (ECF No. 2) is DENIED, and this proceeding is DISMISSED, with prejudice. The Court declines to issue a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 2̲2̲ day of September, 2017.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge